UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

ROLETTA L. COLLINS )
)
v. ) NO. 2:04-CV-355
)
JO ANNE B. BARNHARDT, )
Commissioner of Social Security )

**MEMORANDUM OPINION**

The plaintiff Roletta L. Collins has filed a motion for summary judgment on her complaint to obtain judicial review of the final decision of the defendant Commissioner of Social Security Jo Anne B. Barnhardt denying her application for supplement security income and disability insurance benefits under the Social Security Act. The defendant has filed a motion for summary judgment.

Ms. Collins was born in 1967 and was 36 years old at the time of her administrative hearing. [Tr. 36]. She completed ninth grade and has relevant past work experience as a cook, furniture sander/stainer, forklift operator, and order puller/packer. [Tr. 17, 37]. Ms. Collins alleges she is disabled as of July 12, 1996, from lower lumbar disc disease, neck and head pain, right hip pain, muscle spasms in her hands, attention deficit hyperactivity disorder [ADHD], a learning disability, and

sleeping problems. [Tr. 17]. A previous decision by an Administrative Law Judge found that Ms. Collins was not disabled from June 30, 1998, through December 7, 2001. [Tr. 16]. Based upon a finding that her impairments were severe, but not severe enough, on July 21, 2003, an ALJ found that Ms. Collins was not disabled as defined by the Social Security Act. [Tr. 21].

In March 2002, Ms. Collins received a caudal epidural steroid injection to help with pain from her degenerative disk disease. [Tr. 400].

In April 2002, Dr. Jack Scariano, Jr., performed a comprehensive neurological evaluation on Ms. Collins. [Tr. 246-47]. The doctor wanted an MRI of her spine and prescribed some medication. [Tr. 247].

Also in April 2002, Ms. Collins underwent an epidural steroid injection and a right scaroiliac joint injection, both under fluoroscopy. [Tr. 397].

From April 2002 until June 2003, Ms. Collins received physical therapy from the East Tennessee Comprehensive Rehabilitation Center. [Tr. 293-379]. The treatments were for complaints of chronic low back pain, osteoarthritis, right hip pain, intermittent bilateral leg numbness, lower extremity pain, poor trunk mobility, and difficultly with walking secondary to her pain. [*Id.*].

In May 2002, a MRI of Ms. Collins' lumbar spine indicated degenerative disc disease and facet joint arthritis at L5-S1. [Tr. 179, 248].

2

In June 2002, Ms. Collins' mental health treatment plan was updated. [Tr. 167]. She continued to be diagnosed with a depressive disorder not otherwise specified, and her goal in therapy was to manage her mood. [*Id.*].

Also in June 2002, Dr. Michael Chavin of the Morristown Pain Clinic wrote Ms. Collins a letter which read:

> It has come to my attention that you are not following my instructions and the requirements of the contract that you signed regarding the proper use of the narcotics that you were prescribed for your medical condition. I must now let you know that **effective immediately** that I will no longer be seeing you as a patient in my office." [Tr. 249].

In July 2002, Ms. Collins requested a referral to a pain clinic for her chronic back pain and osteoarthritis. [Tr. 221]. Dr. Janice Walker-Filmore of the Knoxville Pain Center evaluated Ms. Collins for her pain later that month. [Tr. 250-51]. She received an epidural injection, which she tolerated well. [Tr. 251].

In September 2002, a family nurse practitioner noted that Ms. Collins' response to palpitation of her spine was "grossly out of line" with the physical findings and that Ms. Collins got up and down easily. [Tr. 220].

In October and November 2002, Ms. Collins frequently participated in aquatic therapy for her back pain. [Tr. 224-28, 230-35].

From November 2002 until June 2003, Ms. Collins was seen by a social worker

3

and psychiatrist at Cherokee Health Systems. [Tr. 411-29]. She was diagnosed with a depressive disorder not otherwise specified and ADHD. [Tr. 411]. In December 2002, Ms. Collins reported she was "doing much better" since beginning a new antidepressant. [Tr. 425]. Her mood had greatly improved, her anxiety was greatly decreased, and she was resting better at night. [*Id*.]. In May 2003, Ms. Collins indicated she was "doing much better" since beginning on a medication for her ADHD. [Tr. 421]. Her concentration, memory, and reading comprehension were "greatly improved," and she was "absolutely thrilled with her progress." [*Id*.]. The clinician noted that, "As always, she is doing well." [*Id*.].

In December 2002, Ms. Collins was evaluated by Alice Garland, M.S., in connection with her application for disability benefits. [Tr. 252-56]. According to Ms. Garland, Ms. Collins had a borderline to low average intelligence, and her ability to relate to others was adequate. [Tr. 254]. Ms. Collins' IQ scores placed her in the mildly mentally retarded range, although her adaptive behavior fell well within the borderline range. [Tr. 255]. Ms. Garland diagnosed her with a depressive disorder not otherwise specified and found that her ability to perform complex and detailed work as well as persist and concentrate was limited. [*Id*.]. Her ability to get along with people and work with the public was not significantly limited. [*Id*.].

That same month, Gina Frieden evaluated Ms. Collins' mental residual

4

functional capacity [RFC] in connection with her application for disability benefits. [Tr. 259-75]. Ms. Frieden found Ms. Collins was mildly limited in her ability to maintain social functioning and moderately limited in her ability to maintain concentration, persistence, or pace. [Tr. 272].

From December 2002 until June 2003, Ms. Collins was seen by a social worker and psychiatrist at Cherokee Health Systems. [Tr. 411-29]. She was diagnosed with a depressive disorder not otherwise specified and ADHD. [Tr. 411].

In January 2003, Ms. Collins was evaluated by Dr. Reeta Misra in connection with her application for disability benefits. [Tr. 276-83]. The doctor found she could occasionally lift/carry 20 pounds, frequently lift/carry 10 pounds, and sit/stand/walk for six hours out of an eight-hour workday. [Tr. 277]. She could occasionally climb, balance, stoop, kneel, crouch, and crawl. [Tr. 278].

At Ms. Collins' administrative hearing held on July 11, 2003, the testimony of Ms. Collins and vocational expert Cathy Sanders was received into evidence. [Tr. 36-63]. Ms. Collins' last job was as a trainer for a flooring company. [Tr. 40]. Ms. Collins testified she injured her back on the job and received worker's compensation payments. [Tr. 45-46]. She sleeps most of the day as a side effect from the pain medication she takes. [Tr. 47]. She testified some of her other problems include depression, ADHD, a sore neck, muscle spasms, and hip pain. [Tr. 50, 52, 54, 55, 58].

5

Vocational expert Cathy Sanders testified next. [Tr. 61-63]. She testified that Ms. Collins' past relevant work was light and medium unskilled. [Tr. 61]. The ALJ then asked her to consider a person of Ms. Collins' age, education, and work background who was restricted to light work activities with frequent postural changes in a simple unskilled job. [Tr. 61-62]. The vocational expert indicated such a person could work as a ticket clerk, parking lot attendant, information clerk, labeler, office assistant, and seat gate guard. [Tr. 62].

The ALJ ruled that Ms. Collins was not disabled because her early disc desiccation, residuals of a compression fracture in her back, right hip bursitis, borderline intellectual functioning, and depression were severe but not severe enough. [Tr. 21]. The ALJ then found Ms. Collins had the RFC to perform unskilled, light work involving simple tasks that required only occasional climbing, crouching, crawling, and kneeling and allowed for frequent postural changes. [Tr. 22]. Ms. Collins could perform work as a cook, furniture sander/stainer, forklift operator, and order puller/packer. [Tr. 23].

This court must affirm an ALJ's conclusions unless the ALJ applied incorrect legal standards or made findings of fact unsupported by substantial evidence in the record. 42 U.S.C. § 405g. "Substantial evidence" is such relevant evidence as a

6

reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion." *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Accordingly, this court may not try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility. *Walters v. Commissioner of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).

Ms. Collins requests summary judgment and challenges the ALJ's finding that her anxiety was not a severe impairment, his failure to consider her impairments in combination, his erroneous failure to follow the vocational expert's testimony, and his error in the assessing of her pain.

Ms. Collins first argues the ALJ erred by finding that her anxiety was not a severe impairment. The record is void of a diagnosis of anxiety from an acceptable medical source as defined by 20 C.F.R. § 404.1513(a). The record is also void of any evidence that Ms. Collins' purported anxiety significantly limited her ability to perform work. The ALJ had substantial evidence to support his finding that Ms. Collins' anxiety was not a severe impairment.

Ms. Collins next contends the ALJ erred by not considering her impairments in combination. Impairments have been considered in combination when the ALJ

7

refers to them in the plural (i.e., impairments), focuses the claimant's RFC on more than one impairment, and asks a hypothetical question that encompasses the impairments. *Loy v. Secretary of Health and Human Services*, 901 F.2d 1306, 1310 (6th Cir. 1990).

The ALJ referred to Ms. Collins' impairments in the plural four times. [Tr. 21, 22, 23]. Ms. Collins' RFC was focused on more than one impairment; it focused on her borderline intellectual functioning and her back problems. Finally, the hypothetical question asked of the vocational expert encompassed Ms. Collins' borderline intellectual functioning and her back problems. Because the ALJ complied with the Sixth Circuit's standard for considering impairments in combination, Ms. Collins' assertion is moot.

Ms. Collins then argues the ALJ erroneously ignored some of the vocational expert's testimony. Her attorney asked the vocational expert if she was familiar with the Global Assessment of Functioning [GAF] scores. [Tr. 62]. When the vocational expert indicated that she was, the attorney then asked her if a person had a GAF of 50, would that person be able to perform the above-mentioned jobs. [Tr. 63]. The vocational expert answered that a continuous GAF of 50 would preclude work in those jobs. [*Id.*].

Pursuant to 42 U.S.C. § 423(d)(1)(A), for a disability to be considered

8

Case 2:04-cv-00355   Document 16   Filed 06/02/05   Page 8 of 10   PageID #: 23

continuous, it must have continued or be expected to continue for twelve months in a row. Ms. Collins' mental health records do not support such a finding about her GAF for several reasons. The most important reason is that the reports Ms. Collins cites to occurred before December 7, 2001. An ALJ has already decided that Ms. Collins was not disabled prior to December 7, 2001. There is no evidence in the record to support a continuous GAF of 50 for the time period in question for this appeal. Ms. Collins' claim must fail.

Lastly, Ms. Collins contends the ALJ erred in his assessment of her pain. According to the ALJ, Ms. Collins "does have impairments which could reasonably be expected to cause some pain and other symptoms, but not to the extent alleged." [Tr. 22]. The ALJ noted that Ms. Collins indicated that heating pads helped with her pain as did medication and aquatic therapy. [Tr. 22-23]. In fact, by the end of her aquatic therapy, Ms. Collins had a full range of motion in all areas. [Tr. 293]. In addition, Ms. Collins demonstrated drug-seeking behavior. [Tr. 249]. The ALJ's determination that Ms. Collins' pain was not as extensive as alleged was made with substantial evidence.

Accordingly, Ms. Collins' motion for summary judgment will be denied, the defendant's motion for summary judgment will be granted, and this action will be dismissed.

An appropriate order will follow.

ENTER:

       s/Thomas Gray Hull
      THOMAS GRAY HULL
        SENIOR U. S. DISTRICT JUDGE